(No. 25697.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JERRY MANGANO, Plaintiff in Error.

*Opinion filed October 11, 1940—Rehearing denied Dec. 10, 1940.*

CHARLES A. BELLOWS, (J. W. BELLOWS, of counsel,) for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Jerry Mangano, Joseph Russano, and Italo Begani were indicted in the criminal court of Cook county for the murder of Harry Francois, a policeman. Russano and Begani secured a severance. A jury found Mangano guilty and imposed the death penalty. This writ of error was issued to review the record as to Mangano.

About 10:30 on the evening of November 20, 1939, Theodore Nelson and a woman companion were sitting in his automobile parked in the vicinity of Humboldt Park in Chicago when Mangano appeared on the left side of the automobile and Russano and Begani on the right. All were armed and they demanded that Nelson unlock the door, ordered the woman to move to the rear seat and told Nelson they were going to use his automobile. At this time Francois and another police officer riding in a police car stopped nearby. Francois approached the Nelson automobile and asked what was going on. Nelson replied that he was being held up and about that time Nelson started his car to drive away. Mangano, who was then near the left rear of the Nelson car, shot and killed Francois and he, with the other two defendants, fled, but all were taken into custody on November 22.

On the trial Nelson and the woman accompanying him identified Mangano as one of the three who held them up. Frederick A. Blank, the officer who was with Francois in the police car, identified Mangano as the one who fired the shot. Blank testified that he saw Mangano in the police station on November 22 and asked him why he shot the police officer. Mangano replied "I can't stand a pinch. I have a bad record." Sergeant Reilly of the police force had a conversation with the defendant the same day, in which Mangano said it was the first opportunity he had to get even with the police officers for shooting his partner some five or six years previous. Mangano testified in his own behalf and admitted firing the shot that killed the officer.

The principal error assigned relates to the admission of evidence. Over the objection of the defendant the People were permitted to introduce evidence of other crimes as follows: (1) Jeanette Goldberg, the owner of a leather goods store, testified that on April 8, 1939, the defendant and another, both armed, came into her store and attempted a hold up; when the defendant ran from the place he shot Mr. Goldberg in an eye; (2) Leo Kafka testified the de-

fendant and two others robbed him of personal articles and money on November 5, 1939; (3) William Wcislo and Lottie Kurpiewski testified that on November 7, 1939, they were seated in an automobile when Mangano and the other two defendants, all armed, got into the car and drove it into an alley. There the robbers took from them personal effects and money. After driving into another alley Mangano, by the means of a gun, ordered Miss Kurpiewski to get out of the car and go down the alley, where he raped her; (4) Wilma Smith testified that on November 12, 1939, while seated in an automobile with Charles Cholke, the defendant and three others got into the car and drove it away. They were armed and Mangano and his companions took from them money and personal effects; (5) Alice McDermott, in charge of a Western Union office on Jackson boulevard, said that on November 15, 1939, two armed men, one of whom was the defendant, robbed that office; (6) Homer Dickson, in charge of a Western Union office on East Cermak road, testified that on October 16, 1939, the defendant and another, both armed, entered the office. The record does not disclose what happened thereafter; (7) John R. Spears testified that as he was nearing his automobile on the night of November 20, 1939, the defendant and two others robbed him. Mangano, testifying in his own behalf, denied participation in each and all of said crimes.

Evidence which discloses that the accused committed crimes other than the one charged is admissible only when it tends to establish the crime for which he is being tried. Before such evidence is admissible it must meet the same test as to relevancy and materiality to the issues as other evidence. (*People* v. *Jennings,* 252 Ill. 534; *Farris* v. *People,* 129 id. 521.) It has been held that the evidence of other crimes is admissible if it has a tendency to identify the accused as the one who committed the crime charged, to show his presence at the scene of the crime when an alibi is interposed, to prove design, motive or knowledge where these matters are in issue or relevant. *People* v. *Mandrell,*

306 Ill. 413; *People* v. *Heffernan,* 312 id. 66; *People* v. *Watkins,* 309 id. 318.

It is contended on behalf of the prosecution that the evidence of the other robberies and rape was admissible for the purpose of establishing motive. The People were not required to prove the cause or reason that induced the defendant to kill the officer. Motive is not one of the essential elements of the crime of murder. If the evidence established beyond a reasonable doubt that the defendant killed Francois as charged, the question whether there was or was not a motive for the killing was immaterial. (*People* v. *Corder,* 306 Ill. 264; *People* v. *Watkins, supra.*) This rule, however, does not prevent the introduction of evidence to show the presence of a motive which would lead the accused to commit the act charged. *People* v. *Zammuto,* 280 Ill. 225.

It is conceded by the evidence that the defendant and his associates were engaged in the commission of a crime when officer Francois approached them and inquired what they were doing. Immediate arrest was evident and to avoid possible trial and punishment the defendant shot the officer and fled. Such circumstances established the killing was done to avoid arrest for the offense in which he was then engaged. Motive was thereby established, and the facts supporting it are undisputed in the record and there was no need of further proof of motive.

Emphasis is placed upon the statements made by the defendant to officer Blank, in which he stated he killed the policeman to avoid a "pinch." That he had a bad record. It is claimed that this was evidence of the motive for the killing and that proof of the robberies and rape was proper to support the cause defendant assigned for the shooting. Such proof only tended to establish the details of a criminal record which the defendant himself described as bad. The proof of the crimes of robberies and rape was not relevant to any issue in the case.

The jury not only determined the guilt of the accused but passed upon the turpitude of the crime and, as punishment, fixed the extreme penalty. It is impossible to determine the influence the proof of the other crimes had upon the jury in determining those questions. In the trial defendant had the right to introduce all material evidence that tended to mitigate the crime and lessen the punishment and was likewise entitled to have all evidence excluded which was not material or relevant to the case. In *People* v. *Lane,* 300 Ill. 422, it was held that a verdict finding a defendant guilty of murder and fixing his penalty at death could not be sustained even though there was competent evidence in the record to support it, where incompetent evidence had been admitted which showed the commission of other crimes by the defendant and which had a tendency to influence the jury in fixing the penalty. To the same effect *People* v. *Heffernan, supra.*

An alienist who examined defendant and gave him certain intelligence tests testified that his tested intelligence was that of a child of eight years. From such examination he gave it as his opinion that the defendant knew the difference between right and wrong but did not have the power of selection. No other evidence touching upon the insanity of the defendant was introduced. Defendant claims the introduction of such testimony raised a question of insanity of the defendant and the burden was thereby cast upon the People to prove his sanity beyond a reasonable doubt, which burden it did not meet. The sanity of the defendant was not raised by such proof and defendant's contention is untenable.

Other errors are assigned but they are such that it is not probable that they will occur on a retrial and they will not be considered. For the reasons stated the judgment of the criminal court of Cook county is reversed, and the cause remanded to that court for a new trial.

*Reversed and remanded.*