Filed 7/24/25; Modified and Certified for Pub. 8/20/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CARU SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SUSAN B. ANTHONY,<br><br>    Defendant and Appellant. | A167001<br><br>(Solano County<br>Super. Ct. No. FCS049705) |

This is the second appeal in a lawsuit brought by plaintiff, Caru Society for the Prevention of Cruelty to Animals (Caru), against defendant, Susan B. Anthony.  In 2022, we upheld a trial court's determination that defendant was illegally breeding and keeping an excessive number of dogs under conditions that violated state and local laws.  (*Caru Society for the Prevention of Cruelty to Animals v. Anthony* (Jun. 7, 2022, A160487, A161683) [nonpub. opn.] (*Caru*).)  At the same time, we held the injunctive relief ordered by the court was overbroad.  (*Ibid.*)  We therefore reversed the permanent injunction and remanded the matter to the trial court to modify its relief in a manner consistent with our opinion.  (*Ibid.*)

In the present appeal, defendant challenges two provisions of the trial court's modified permanent injunction as overbroad and unconstitutional.

1

We agree as to one provision.  Accordingly, we partially reverse the modified permanent injunction and once again remand this  matter to the trial court for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

Defendant owns and operates a business called California Carolina Dogs from her properties in Solano County.  Caru is a society for the prevention of cruelty to animals (SPCA) registered as a nonprofit public benefit corporation with a principal office in Sonoma County.

On October 5, 2017, Caru filed a complaint against defendant asserting one cause of action under Corporations Code section 10404.  This law authorizes an SPCA such as Caru to bring a complaint against a person for violating "any law relating to or affecting animals . . . ."  (Corp. Code, § 10404.)  Caru sought injunctive and declaratory relief.

In February 2019, the trial court found after a contested hearing that Caru established as a matter of law that defendant violated multiple provisions of the Vallejo Municipal Code relating to animals by, among other things, maintaining more than four dogs on her property (Vallejo Mun. Code, § 7.04.030); allowing her dogs to be in public places unrestrained by leash or chain (*id.*, § 7.24.010, subd. (A)(1)); allowing her dogs to habitually bark and disturb the peace (*id.*, § 7.36.020); maintaining structures on her property exceeding the permissible 50-percent maximum coverage (*id.*, § 16.14.060, subd. (G)); and having a fence on her property exceeding the maximum allowed height of three feet (*id.*, § 16.70.060, subd. (F)).  Caru then

---

[1] We limit our discussion of the factual background of this case to that which is necessary for context and to resolve the relevant issues.  A more complete recitation of the facts is set forth in our prior opinion (*Caru, supra,* A160487, A161683).

2

successfully moved for summary adjudication as to defendant's violations of the municipal code.

Caru also successfully moved to have matters deemed admitted based on defendant's failure to serve timely responses to its requests for admissions. These matters deemed admitted include that defendant qualified as a " 'breeder' " under Health and Safety Code section 122045; failed to maintain sanitary conditions for her dogs (*id.*, § 122065, subd. (a)); failed to provide her dogs with adequate nutrition and potable water (*id.*, § 122065, subd. (b)); and failed to provide her dogs with adequate socialization or veterinary care (*id.*, § 122065, subds. (e), (g)).

In November 2020, the trial court thus granted summary judgment in favor of Caru and entered a permanent injunction against defendant. Defendant appealed.

In *Caru, supra*, A160487, A161683, this court upheld the trial court's rulings to deem matters admitted and to grant summary judgment in Caru's favor. We also upheld the trial court's authority to order injunctive relief for Caru. However, we held that the permanent injunction entered by the trial court was overbroad and unauthorized to the extent "the court: (1) enjoined defendant from 'owning, driving, keeping, possessing or having charge or custody of any dog indefinitely until good cause is shown that this order should be modified'; and (2) granted Caru 'full ownership and custody over all dogs, including unborn ones, which are under the ownership, possession, charge or custody of [d]efendant,' including the right 'to take custody of the dogs and transfer them to other rescues or adopters.' " We thus reversed the permanent injunction and remanded the matter for further proceedings.

On August 14, 2022, the trial court received a remittitur from this court with instructions to modify the permanent injunction in accordance

3

with *Caru*. The parties thereafter filed briefs in the trial court to address the appropriate modification of the permanent injunction on remand. Caru also filed a proposed modified permanent injunction.

On October 31, 2022, the trial court held a hearing regarding modification of the permanent injunction. Afterward, the court asked defendant to file a proposed modified permanent injunction no later than November 4, 2022. Defendant did not submit a proposed injunction, and on December 2, 2022, the court entered its final order on the modified permanent injunction.

The modified permanent injunction entered by the trial court remains operative until December 2, 2037. It also sets forth 12 findings of fact which include that defendant: violated the municipal code by, among other things, maintaining more than four dogs at her property and allowing her dogs to roam in public areas unrestrained by leash or chain (Vallejo Mun. Code, §§ 7.04.030, 7.24.010, subd. (A)(1)); and violated the Polanco–Lockyer Pet Breeder Warranty Act (Health & Saf. Code, § 122045 et seq.; Pet Breeder Warranty Act) by, among other things, failing to provide adequate nutrition, potable water, veterinary care, and sanitary living conditions for her dogs (Health & Saf. Code, § 122065, subds. (a), (b)).

The modified permanent injunction also contains two paragraphs targeting defendant's violations of law. Paragraph 1 enjoins defendant from "owning, driving, keeping, possessing or having charge or custody" of more than four dogs "indefinitely until good cause is show [*sic*]" (hereinafter, four-dog-limit provision). As to these four dogs, paragraph 1 also: (a) enjoins defendant from allowing the dogs to run at large or disturb the peace; (b) enjoins defendant "from breeding such dogs, and orders [her] to either sterilize such dogs or obtain veterinarian certification that sterilization

4

cannot be done for veterinary reasons"; (c) enjoins defendant from failing to adequately provide or care for the dogs; and (d) orders defendant to microchip the dogs within 72 hours of receiving notice of the order and to disclose to Caru within 72 hours any change in her dog population.

Paragraph 2, in turn, enjoins defendant from "refusing to humanely surrender any dogs in excess of four that [d]efendant owns, drives, keeps, possesses, or has charge or custody over in violation of this injunction" (hereinafter, humane-surrender provision).  "To facilitate the enforcement of this provision," paragraph 2 requires defendant to: (1) disclose to Caru, under penalty of perjury and within 72 hours of notice of entry of the modified permanent injunction, "a census identifying all dogs owned, kept, possessed, or in [her] charge of custody," and identifying which (if any) of the dogs make up the four-dog allowance; (2) update Caru as to any change in defendant's dog population within 72 hours; (3) allow Caru or its agents to enter defendant's properties, and any structure thereon, "to receive custody of any dogs that Defendant must make available for humane surrender"; and (4) be present at her specified properties upon 24 hours' notice "to cooperate in surrendering excess dogs to Caru . . . .."[2]

On January 10, 2023, defendant timely appealed.

---

[2] Caru is further authorized under the modified permanent injunction to document with photographs and videos the removal of excess dogs from defendant's properties so long as the photographs and videos are not publicly disseminated.

## DISCUSSION

Defendant challenges the modified permanent injunction entered on December 3, 2022, as overbroad and unconstitutional. The governing law is not in dispute.[3]

A court may order injunctive relief to abate a public nuisance or other unlawful activity. (*People v. Padilla-Martel* (2022) 78 Cal.App.5th 139, 150–151 (*Padilla-Martel*).) "The scope of injunctive relief available to address a public nuisance or unlawful business practice is limited, however. 'It is a familiar doctrine of equity that the scope of [an] injunction will be limited to the wrongful act sought to be prevented.' [Citation.] Our high court has cautioned, 'Injunctive process ought never to go beyond the necessities of the case.' (*Anderson v. Souza* (1952) 38 Cal.2d 825, 840–841 [citation].) 'In fashioning a remedy, a court should "strive for the least disruptive remedy adequate to its legitimate task" and tailor it to the harm at issue.' "

---

[3] Caru raises a threshold argument that defendant forfeited the right to challenge the modified permanent injunction on appeal by failing to provide an adequate appellate record which includes the reporter's transcript from the October 31, 2022 hearing. As Caru concedes, defendant requested the reporter's transcript; however, the clerk of the superior court failed to provide it in a timely fashion. Caru also concedes this court does not need the reporter's transcript in order to resolve the only issue raised on appeal— whether the modified permanent injunction is lawful in scope. As Caru stated in its May 24, 2024 letter in response to our instruction to explain the status of the reporter's transcript and why this appeal should not be dismissed: "Although Caru SPCA has made efforts to procure the reporter's transcript, it does not agree that the reporter's transcript is necessary for this appeal. Since this is an appeal over the scope of a permanent injunction— which the Solano County Superior Court already modified in accordance with this Court's prior ruling in 2022 after remand—this appeal will be decided on the parties' briefs, not the handful of post-remand hearings that would constitute the reporter's transcript." We agree with this assessment and therefore reject Caru's forfeiture argument.

6

(*Padilla-Martel*, at p. 151; accord, *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 313 (*Uber*) ["an injunction against legitimate business activities 'should go no further than is absolutely necessary to protect the lawful rights of the parties seeking such injunction' "].)  Consistent with this principle, the court may use its broad equitable powers to " ' "create new remedies to deal with novel factual situations." ' " (*Salazar v. Matejcek* (2016) 245 Cal.App.4th 634, 648.)

We review a trial court's decision to grant or deny injunctive relief under the abuse of discretion standard.  (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.)  We will not disturb the court's exercise of discretion absent a showing of clear abuse. (*Robinson v. U-Haul Co. of California* (2016) 4 Cal.App.5th 304, 314.)  We accept the trial court's factual findings if supported by substantial evidence. (*Padilla-Martel, supra*, 78 Cal.App.5th at p. 150.)  We resolve purely legal issues de novo.  (*In re Butler* (2018) 4 Cal.5th 728, 738–739.)

Here, defendant contends both the four-dog-limit provision (paragraph 1) and the humane-surrender provision (paragraph 2) of the modified permanent injunction are unlawful and must be vacated.  We address each provision in turn *post*.

## I.  *Four-dog-limit Provision (Paragraph 1).*

Vallejo Municipal Code section 7.04.030 provides, in relevant part:  "It shall be unlawful for any owner to keep, harbor, or maintain more than four dogs which are over the age of four months on any lot, premises, dwelling, building, structure, boat or living accommodation . . . ."

The trial court found that "Defendant violated [this provision] in that she admittedly has and is maintaining more than four dogs at her property"

7

and, thus, enjoined her from possessing or having custody or charge of more than four dogs.

On appeal, defendant does not dispute her violation of Vallejo Municipal Code section 7.04.030.  Instead, defendant notes that she has two properties in unincorporated Solano County where section 7.04.030 does not apply—480 Benicia Road and 428 Banning Way.  Defendant thus argues the modified permanent injunction is overbroad to the extent it enjoins her from owning, possessing or having custody of more than four dogs at her Solano County properties outside of the City of Vallejo.

Caru concedes the Solano County Code, which would apply to defendant's properties outside Vallejo, has no four-dog limit.  However, Caru counters that the trial court "deemed [defendant's] dogs as being kept in Vallejo" based on evidence that she has a "history" of moving her dogs among her various properties and "violating the law and court orders . . . ."  Thus, Caru insists, the four-dog-limit provision in the modified permanent injunction is necessary to ensure defendant's compliance.

Again, the relevant law is not in dispute.  A "court of equity will not restrain a person from that which the law authorizes that person to do." (*Dammann v. Hydraulic Clutch Co.* (1920) 45 Cal.App. 511, 513; see *California Retail Liquor Dealers Institute v. United Farm Workers* (1976) 57 Cal.App.3d 606, 610 ["An injunction . . . may be attacked under some circumstances as unconstitutionally over-broad if it prohibits lawful as well as unlawful activity"].)  Moreover, an injunction may not " 'go . . . further than is absolutely necessary to protect the lawful rights of the parties seeking such injunction.' [Citation.]  Rather, it is 'important for the trial court to limit the scope of the injunction, taking only those measures which would

8

afford the People the relief to which they are entitled.' " (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1139.)

Yet, a trial court *is* "entitled to restrain the person from committing similar or related unlawful activity," particularly when the court has reason to anticipate the defendant may attempt to circumvent its order or the law. (*City of Redlands v. County of San Bernardino* (2002) 96 Cal.App.4th 398, 416 (*City of Redlands*), citing *Labor Board v. Express Pub. Co.* (1941) 312 U.S. 426, 436–437 [85 L.Ed. 930] [the breadth of an injunction "must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to those unlawful acts which the [defendant has] committed"].)

In *City of Redlands, supra*, the appellant challenged an injunctive order as overbroad to the extent the order enjoined it from adopting a general plan amendment that failed to comply with applicable environment laws " 'or any similar amendment(s)' " because " 'any similar amendment(s)' " was outside the scope of the litigation. (96 Cal.App.4th at p. 415.) The appellate court, in turn, agreed "that an injunctive order should be limited in scope to the subject of the litigation" but disagreed that the order at hand was overbroad. (*Ibid.*) The appellate court reasoned that the trial court "reasonably included this additional requirement to prevent the County from attempting technical compliance with the court's order (i.e., by simply enacting new amendments with similar language), without remedying the deficiencies raised in this action . . . ." (*Ibid.*)

We reach the same conclusion here. Defendant does not dispute the trial court's findings that she violated multiple local *and* state laws by (inter alia) having more than four dogs at her Vallejo property (Vallejo Mun. Code, § 7.04.030); allowing her dogs to disturb the peace and run at large

9

(Vallejo Mun. Code, § 7.24.010, subd. (A)(1)); and failing to provide adequate nutrition, potable water, sanitary living conditions, and veterinary care for her dogs (Health & Saf. Code, § 122065). Nor does defendant dispute her history of breeding dogs at both her City of Vallejo and Solano County properties and moving her dogs among her properties.[4] Indeed, the record reflects multiple incident reports from the Solano County's Sheriff's Office in which officers described finding excessive numbers of dogs, dogs running at large, excessive barking, and on one occasion fighting among at least eight dogs, on defendant's 428 Banning Way property in an unincorporated area near Vallejo.

Under these circumstances, the trial court reasonably determined that defendant's possession of an excessive number of dogs contributes to the dogs' lack of adequate supervision and substandard living conditions, such that it was appropriate and necessary to enjoin her from owning or possessing more than four dogs in total at all of her properties. Accordingly, we decline to disturb the four-dog-limit provision of the modified permanent injunction. (See *City of Redlands, supra*, 96 Cal.App.4th at p. 415; *Uber, supra*, 56 Cal.App.5th at p. 313 ["an injunction against legitimate business activities 'should go no further than is absolutely necessary to protect the lawful rights of the parties seeking such injunction' "].)

## II.  *Humane-surrender Provision (Paragraph 2).*

Remaining for our consideration is the humane-surrender provision, which enjoins defendant from "refusing to humanely surrender" any dogs in her possession in excess of the four-dog limit. "To facilitate [its]

---

[4] One of defendant's Solano County properties, 480 Benicia Way, is a commercial car wash. Defendant testified in deposition that "on occasion" she had more than four dogs with her at the car wash.

10

enforcement," this provision requires defendant, within 72 hours of receiving notice of the modified permanent injunction, to provide Caru with a "census" identifying all dogs in her possession or charge of custody and identifying which of those dogs she intends to keep as part of the four-dog allowance. Defendant also must update her disclosure to Caru within 72 hours if there is any change in her dog population. Further, should defendant exceed the four-dog limit, Caru is authorized to enter any of defendant's three properties to "receive custody of any dogs that Defendant must make available for humane surrender." Caru may also "document" the surrender of excess dogs on defendant's properties by taking (but not publicly disseminating) photographs and videos.

Defendant contends the humane-surrender provision is contrary to our holding in *Caru* that Corporations Code section 10404, the statute underlying Caru's claim, "does not authorize the permanent injunction entered here to the extent it dispossesses defendant of her right to own dogs." (*Caru, supra*, A160487, A161683.) Indeed, according to defendant, *no* legal authority permits Caru simply to enter her properties and take possession of her excess dogs.

Caru responds that the humane-surrender provision of the modified permanent injunction establishes a lawful process that enables the organization or its agents to humanely take custody of defendant's illegally owned excess dogs "pending separate contempt proceedings." We find Caru's description of the modified permanent injunction inaccurate.

As drafted, the modified permanent injunction makes no mention of any "process" by which Caru takes custody of defendant's excess dogs "pending separate contempt proceedings." On the contrary, if defendant exceeds the four-dog limit, the injunction authorizes Caru immediately to

11

enter her property and take custody of her excess dogs indefinitely, or at least until the injunction expires by operation of law, on December 2, 2037.

This expansive, unbounded grant of authority has no precedent and cannot stand. For one, it indeed runs contrary to *Caru*, in which we held the original permanent injunction was overbroad and unauthorized to the extent that it "dispossess[ed defendant] of [her] canine property for violating local or state civil law." (*Caru, supra*, A160487, A161683.) More importantly, the grant of authority to Caru under the modified permanent injunction to enter defendant's property and take custody of her excess dogs runs contrary to our constitutional jurisprudence.[5]

"Procedural due process imposes constraints on governmental decisions depriving individuals of liberty or property interests. (*Mathews v. Eldridge* (1976) 424 U.S. 319, 332 [47 L.Ed.2d 18, 31–32, citation]; *Isbell v. County of Sonoma* (1978) 21 Cal.3d 61, 68 [citations].) Principles of due process apply to all takings of non de minimus property, including such disparate objects as farm animals [citation], a motorcycle engine [citation], a tortoise [citation] or a newsrack [citation]. [D]ogs being personal property and having economic value, are also included within its reach. (Civ. Code, § 655; Pen. Code, § 491; *Johnson v. McConnell* (1889) 80 Cal. 545, 548–549 [citation]; *People v. Sadowski* (1984) 155 Cal.App.3d 332, 335 [citation]; *Roos v. Loeser* (1919) 41 Cal.App. 782, 785 [citation].)" (*Phillips v. San Luis Obispo Dept. etc. Regulation* (1986) 183 Cal.App.3d 372 376–377 (*Phillips*).)

---

[5] In *Caru*, we found no need to address defendant's constitutional arguments after concluding neither Corporations Code section 10404 nor any other legal authority offered by Caru authorized the original permanent injunction to the extent it dispossessed defendant of her right to own dogs for violating local or state civil law. (*Caru, supra*, A160487, A161683.) For reasons set forth *post*, we conclude for purposes of this appeal her constitutional arguments warrant consideration.

Moreover, the "due process requirement applies to restraining orders . . . . (See *Severson & Werson, P.C. v. Sepehery-Fard* (2019) 37 Cal.App.5th 938, 949 [citation] [failure to comply with statutory notice requirement violates the restrained party's due process rights under [Code Civ. Proc.,] § 527.8]; *Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 866 [citation] [party opposing domestic violence restraining order has due process right to testify, and raise questions to be posed to the moving party]; cf. *Schraer* [*v. Berkeley Property Owners' Assn.* (1989)] 207 Cal.App.3d [719,] 732 [due process may require oral testimony before issuing civil harassment restraining order]; *In re Jonathan V.* (2018) 19 Cal.App.5th 236, 242 [citation] [due process must be satisfied before granting restraining order under Welf. & Inst. Code, § 213.5].)" (*CSV Hospitality Management, LLC v. Lucas* (2022) 84 Cal.App.5th 117, 124–125 ["[when] a petitioner seeking a workplace violence restraining order has offered testimony as to threats of violence, the respondent has a due process right to cross-examine the witness with respect to those allegations"].)

"Decisions construing the federal and state due process guarantees generally require that an individual receive notice and some form of hearing before he [or she] is deprived of his [or her] property or liberty." (*Phillips, supra*, 183 Cal.App.3d at p. 378; accord, *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 213.) Only under special circumstances will these predeprivation hearing and notice requirements be relaxed. (*Carrera v. Bertaini* (1976) 63 Cal.App.3d 721, 728 (*Carrera*).) "Whether special circumstances warrant summary seizure depend upon the nature of the governmental interest, the need for 'very prompt action,' and the duty of the seizing official under the standards of a narrowly drawn statute. [Citations.] It is obvious that summary seizure of

13

dogs must be permitted when of immediate danger to the public, as for example when the dog is vicious or rabid.  In that situation, the governmental interest in protecting the personal and property rights of others is paramount to the property right of the dog owner.  However, the constitutionality of the ordinance or statute justifying seizure rests upon its provision for a prompt postseizure hearing.  (*Kash* [*Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294,] 308; *Carrera, supra*, at p. 729.)" (*Phillips, supra*, 183 Cal.App.3d at pp. 378–379 [concluding the local ordinance was unconstitutional because it "does not provide for a hearing either before or after the taking of a biting or vicious dog"].)

Here, there is no claim, much less evidence, that summary seizure of defendant's excess dogs is warranted to abate an "immediate danger to the public, as for example when the dog is vicious or rabid." (*Phillips, supra*, 183 Cal.App.3d at p. 379.)  Nor is there any other justification in the record that would render "the governmental interest in protecting the personal and property rights of others . . . paramount to the property right of the dog owner." (*Ibid*.)  As such, we conclude defendant is constitutionally entitled to receive notice and some form of hearing before being deprived of her canine property.

*Carrera, supra*, 63 Cal.App.3d 721, is instructive.  There, local animal control officers entered the appellant's property and took possession of her farm animals after the animals were seen roaming at large, " 'very hungry, poor, [and] starved,' " with "swollen and bleeding" legs. (*Id.* at p. 725.)  Reversing the denial of the appellant's petition for writ of mandamus, the *Carrera* court held that "the [local] ordinance allowing the impoundment and sale of farm animals found to be 'at large' upon any street or public place or upon any private property against the wishes of the owner of the property,

and [former] Penal Code section 597f, to the extent that it commands the impoundment of any farm animal 'neglected' by its owner, are constitutionally invalid for failure to provide the owner or person entitled to possession of the animals a reasonable notice and hearing as required by the due process clause of the Fourteenth Amendment."[6] (*Carrera, supra*, at p. 724; see *id*. at p. 726 ["Absent extraordinary circumstances justifying resort to summary procedures," notice and a hearing must be provided before taking a person's private property].)

In so holding, the *Carrera* court noted that "the fact that the deprivation may be temporary does not alter the need for due process. . . . '[I]t is now well settled that a temporary non-final deprivation of property is nonetheless a "deprivation" in the terms of the Fourteenth Amendment.' " (*Carrera, supra*, 63 Cal.App.3d at p. 726.) "Similarly, the lack of a meritorious defense by the owner does not obviate the necessity of a notice and hearing. 'It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing . . .' [Citation.] Therefore, even though appellant was probably guilty of permitting some of her livestock to run at large in violation of county ordinance code section 4-68, and of failing

---

[6] Former Penal Code section 597f, repealed effective January 1, 2022, provided, in relevant part: " 'Every owner, driver, or possessor of any animal, who shall permit the same to be in any building, enclosure, lane, street, square, or lot, of any city, city and county, or judicial district, without proper care and attention, shall, on conviction, be deemed guilty of a misdemeanor. And it shall be the duty of any peace officer, officer of the humane society, or officer of a pound or animal regulation department of a public agency, to take possession of the animal so abandoned or neglected and care for the same until it is redeemed by the owner or claimant, and the cost of caring for such animal shall be a lien on the same until the charges are paid.' " (*Carrera, supra*, 63 Cal.App.3d at p. 724, fn. 1.)

to care for her animals in violation of [former] Penal Code section 597f, she nonetheless was entitled to a hearing prior to the seizure of her animals." (*Id*. at p. 727; compare Pen. Code, § 597.1, subds. (a), (b), (f) & (g) [when a neglected animal is seized pursuant to Pen. Code, § 597.1, the misdemeanant owner or keeper of the animal is entitled to an administrative hearing]; *Bakos v. Roach* (2025) 108 Cal.App.5th 390, 398 ["The provision for a hearing [under Pen. Code, § 597.1] protects the due process rights of the [animal] owner whose property was taken"].)[7]

Thus, even if Caru is correct that the modified permanent injunction provides a "process in which Caru . . . humanely takes custody of any illegally-owned excess dogs" without taking "ownership" of any dogs, it nonetheless violates the due process clause. In Caru's words, the modified permanent injunction "requires Anthony to permit Caru SPCA to receive custody of any excess dogs pending separate contempt proceedings." Yet, as *Carrera* explains, a " 'temporary non-final deprivation of property is nonetheless a "deprivation" in the terms of the Fourteenth Amendment.' " (*Carrera, supra*, 63 Cal.App.3d at p. 726.) As such, the "process" provided here does not pass muster.

Finally, defendant's counsel, at oral argument, insisted that Penal Code section 597.1 is the sole statutory means by which an SPCA can obtain a court order allowing it to seize a dog based on the owner's violation of an animal protection law. We disagree. Corporations Code section 10404

---

[7] Indeed, we noted in *Caru* that, under Penal Code section 597.1, a court may dispossess a misdemeanant dog owner of his or her canine property only *after* affording the owner certain legal protections, including a hearing. (*Caru, supra*, A160487, A161683.) We also noted that, in this case, defendant has never been charged with a violation of this criminal statute. (*Ibid*.) And yet, the trial court has now twice drafted an injunction that deprives defendant of her canine property without notice or a hearing.

16

authorizes an SPCA to "proffer a complaint against any person, before any court or magistrate having jurisdiction, for the violation of any law relating to or affecting animals, and may aid in the prosecution of any such offender before the court or magistrate." Thus, the Legislature, in drafting Corporations Code section 10404, chose to authorize the proffering of any "complaint," not just a "criminal complaint." Similarly, Corporations Code section 10405 provides, "All magistrates, sheriffs, and officers of police shall, as occasion may require, aid any such [SPCA] corporation, its officers, members, and agents, in the enforcement of all laws relating to or affecting animals." No distinction is drawn in the statute between civil and criminal laws. (Corp. Code, § 10405.) We will not read the term "criminal" into Corporations Code section 10404 or 10405 when the statutory language, standing alone, is quite clear. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 301.)

Indeed, " '[c]ities and counties have broad powers to regulate and control dogs within the boundaries of their jurisdictions.' " (*Danielson v. County of Humboldt* (2024) 103 Cal.App.5th 1, 14.) As such, there are numerous statutory schemes authorizing law enforcement at the state and local levels to take possession of abused or mistreated animals so long as the owner's due process rights are protected. (*Id.* at pp. 14–19 [discussing various state and local statutory schemes governing the safety and well-being of dogs].) Even where defendant resides, the Solano County Code authorizes "[t]he animal control director [to] take up, impound and safely keep any of the animals enumerated in this chapter found running at large . . . in any street, road, lane, alley, court, square, park or other place belonging to or under control of the county, or upon any private property in the county, contrary to the provisions of this chapter; or where said animal is engaged in

17

an activity or existing in any condition prohibited by this chapter; or where said animal is, or will be, without proper care due to injury, illness, death, incarceration, or other involuntary absence of the owner or person responsible for the care of such animal; or where said animal is to be quarantined." (Solano County Code, § 4-40.) As such, we conclude Caru may appropriately seize defendant's excess dogs based on her many violations of state and local animal protection statutes, but only so long as defendant's due process rights are respected. (See *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, 142–143 [Corp. Code, § 10404 "confers quasi-governmental powers" on SPCA's].)

## III.    *No Forfeiture.*

Finally, we reject Caru's argument that defendant "failed to preserve overbreadth objections on appeal by defaulting on the issue in the trial court." Caru correctly notes that defendant failed to submit a proposed modified permanent injunction, as requested by the trial court. Nonetheless, defendant submitted briefing on remand in which she argued, inter alia, that the municipal code's four-dog limit did not apply to her properties outside the Vallejo city limits. She further argued, quoting *Caru*, that "the Appellate court stated that Caru offers no 'legal [*sic*] authority to support its theory that a court may dispossess a dog owner of its canine property for violating local or state civil law. Indeed, under the Penal Code, a court may only do so after affording the misdemeanant owner certain legal protections, such as the right to a hearing under Pen. Code, Section 597.1. [Citation.] *That never happened here* and so this court cannot order defendant to simply surrender her dogs to the plaintiff." (Italics added.) These arguments were sufficient to preserve her overbreadth and constitutional challenges for appeal.

18

In any event, as a legal matter, Caru, not defendant, bore the burden of formulating the nature of the modified permanent injunction on remand: "It is the burden of the party seeking injunctive relief to formulate the nature of the remedy sought." (*Bring Back the Kern v. City of Bakersfield* (2025) 110 Cal.App.5th 322, 357; accord, *O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481.) Accordingly, Caru's forfeiture argument fails.[8]

## DISPOSITION

The humane-surrender provision (paragraph 2) of the modified permanent injunction entered on December 2, 2022, is reversed. In all other regards, the modified permanent injunction is affirmed. The matter is remanded to the trial court for further proceedings consistent with the opinions reached herein. The parties shall bear their own costs on appeal.

Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

A167001/*Caru Society for the Prevention of Cruelty to Animals v. Anthony*

---

[8] Caru's request for judicial notice filed on January 7, 2025, is denied as unnecessary to our resolution of the issues raised on appeal.

Filed 8/20/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CARU SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>SUSAN B. ANTHONY,<br><br>     Defendant and Appellant. | A167001<br><br>(Solano County<br>Super. Ct. No. FCS049705)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 24, 2025, be modified as follows: On page 10, the first sentence of the last paragraph of part I of the discussion, which begins with "Under these circumstances," is deleted and replaced with: "Under these circumstances, the trial court reasonably determined that defendant's possession of an excessive number of dogs contributes to the dogs' lack of adequate supervision and substandard living conditions, such that it was appropriate and necessary to enjoin her from owning or possessing more than four dogs in total at all of her properties in the County of Solano."

There is no change in the judgment.

The opinion filed herein on July 24, 2025, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

                                        Jackson, P. J.

WE CONCUR:

Simons, J.
Burns, J.

1

Trial Court:       Superior Court of the County of Solano

Trial Judge:      Alesia Jones

Counsel:          Law Offices of Ira Leshin and Ira Leshin for Defendant and Appellant.

                    Animal Legal Defense Fund, Cristina Kladis; Greenberg Traurig and William J. Goines for Plaintiff and Respondent.